DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Rayco Manufacturing, | ) | |
| | ) | CASE NO. 5:08 CV 74 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Deutz Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

INTRODUCTION

The dispute in this case arises out of the formation and terms of a contract for the sale of engines to be used in heavy landscaping equipment. For nearly twenty years, Plaintiff Rayco Manufacturing ("Rayco") has purchased engines and other products from defendants, Deutz AG and Deutz Corporation. Rayco is an Ohio corporation involved in the design, manufacture and sale of landscape equipment. Deutz AG is a German company that manufactures and sells diesel engines, and distributes them in the United States through its subsidiary, Deutz Corporation ("Deutz"). Deutz is incorporated in Delaware and maintains its principal place of business in Georgia.

Currently before the Court is Defendant Deutz's motion to transfer venue pursuant to 28 U.S.C. § 1406(a), or, in the alternative, § 1404(a). (Doc. 16). Plaintiff has filed a motion in opposition (Doc. 21), and Defendant has filed its reply (Doc. 23). For the reasons set forth herein, Defendant's motion to transfer venue is denied.

## FACTS

In 2001, Rayco began purchasing 82hp BF4M1011 Deutz engines to power its C85 Crawler, which had been specifically designed to accept the Deutz engines. Approximately three years later, Deutz abandoned manufacture of its 82hp BF4M1011 engines, replacing the design with an upgraded 87hp BF4M2011 engine that complied with federal exhaust emission standards. In response, Rayco discontinued its C85 Crawler and began manufacture of its own upgraded model, the C87 Crawler, which again was specifically designed to accept Deutz engines. Rayco then submitted Purchase Orders (Doc. 21-2 - Decl. of John Bowling) for hundreds of the new Deutz engines. Each Purchase Order contained both an order number and a bold-faced statement that the order was "subject to Rayco terms and conditions." (Doc. 21-2 - Rayco Purchase Order # 753404, Jan. 30, 2006.)

Upon receipt of the Purchase Orders, Deutz submitted Order Confirmations (Doc. 17-3) agreeing to the purchase price and detailing the payment and shipment schedules. Noted at the bottom of each Order Confirmation was a provision that all products sold by Deutz are subject to its "standard terms and conditions of sale." (*Id*.)

Initially, neither party supplied or requested a copy of the terms and conditions referred to in their correspondence. Despite the lack of disclosure, the parties continued in the course of business without complaint. Deutz shipped the engines Rayco ordered, and Rayco accepted delivery and made its payments for those engines.

Then, starting in December 2004, the Deutz engines began to fail due to an oil temperature sensor malfunction that failed to shut down the engines before overheating damaged

them. At least twelve of these failures occurred in Crawlers sold and used in Ohio. As a result, Rayco was forced to repair or replace the damaged engines.

Rayco then submitted to Deutz an invoice seeking repayment in the amount of $1,062,500 for costs due to the engine malfunctions. On March 20, 2006, Deutz notified Rayco that its alleged costs repairing or replacing each engine far exceeded the value of the engines as new. (Doc. 17-4.) Deutz also stated that the costs were not covered by Deutz's limited warranty, and that it would not honor Rayco's invoice.

On April 28, 2006, Rayco requested a copy of Deutz's Terms and Conditions of Sale ("TCS"), which was provided via e-mail the same day. (Doc. 17-5.) On May 11, 2006, Rayco responded with its objection to Deutz's TCS, and maintained that it would not retroactively agree to those terms. (Doc. 21-2 Ex. 6.) The parties then engaged in a series of correspondences, during the course of which Deutz halted all shipments of its products to Rayco, and repeatedly requested that Rayco acknowledge its acceptance of Deutz's terms. Rayco requested that Deutz resume its shipments immediately, as nearly all of Rayco's products were designed to operate solely in conjunction with Deutz engines. Rayco also noted that it could not locate substitute engines and would be forced to shut down its operation entirely if Deutz did not resume its shipments. Deutz refused to acquiesce until the disagreement regarding the terms and conditions was satisfied. Rayco replied that given the imminent hardship it would face by refusal, it had "no choice" but to expressly accept Deutz's TCS for "all past, present and future sales." (Doc. 21-2 Ex. 12.)

Rayco then filed the instant complaint seeking damages for breach of express warranty, breach of contract, breach of implied warranty of fitness for particular purpose, breach of implied warranty of merchantability, indemnity, negligence, common law fraud, negligent misrepresentation, and a declaratory judgment that Rayco's acceptance of Deutz's TCS was made under duress and thus is void and unenforceable. Deutz subsequently moved to transfer venue to the United States District Court for the Northern District of Georgia, Atlanta Division.

## ANALYSIS

The Court must undertake three considerations to determine whether Deutz's motion to transfer venue should be granted. First, the Court must analyze the specific language used in Deutz's TCS, which forms the primary basis for Deutz's motion to transfer. Second, the Court must consider whether a contract was formed between Rayco and Deutz, and, if so, which terms apply. Finally, in light of the previous determinations, the Court must consider Deutz's motion to transfer venue pursuant to 28 U.S.C. § 1406(a) and § 1404(a). Each consideration is discussed in detail below.

Deutz's Venue Clause:

Deutz's TCS includes a clause that states, in pertinent part:

> For all controversies, disputes or suits arising under the contract, the Purchaser consents to the jurisdiction of the courts in the State of Georgia, United States of America....Such consent to jurisdiction shall not limit the right of DEUTZ to bring an action in any other court where jurisdiction over the Purchaser may be obtained.

(Doc. 17-5 ¶ XV.)

Although Deutz argues that this is a "forum selection" clause, the language used does not support such a characterization. The provision does not use language creating mandatory, exclusive jurisdiction in Georgia, as Deutz argues, but rather contemplates that Deutz may bring suit in Georgia, or another venue where the defendant is subject to jurisdiction. Here, Deutz is the defendant, and has not brought suit anywhere. Further, Deutz relies in part on *Carnival Cruise Lines, Inc. v. Shute* to show that forum selection clauses carry significant legal weight in considerations of venue transfer. 499 U.S. 585, 595 (1991). However, *Carnival* is easily distinguished from the case at bar. The forum selection provision at issue in *Carnival* used exclusionary language to indicate that suit must be brought "in and before a Court located in the State of Florida, U.S.A., to the *exclusion* of the Courts of any other state or country." *Id.* at 588 (emphasis added). In contrast, Deutz's provision merely indicates that the purchaser submits to jurisdiction in Georgia without *requiring* suits be brought in that state. While it is true that § 1404(a) transfer requests are given significant deference when the parties have incorporated a forum selection clause into their contract, Deutz's TCS do not contain a forum selection provision. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). Therefore, this Court construes Deutz's venue provision as a permissive consent to jurisdiction clause, and finds that it cannot create mandatory jurisdiction in Georgia.[1]

[1] Even if Deutz's venue provision could correctly be construed as a forum selection clause, Deutz loses the Battle of the Forms (discussed below), and thus, none of its terms apply.

Contract Formation:

Next, the Court considers whether a contract was formed between the parties, and, if so, whose terms should control. A contract for the sale of goods is created through an offer and an acceptance, resulting in mutual agreement between the parties. *United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320 (6th Cir. 1993). Contract law enforces the objective manifestation of mutual agreement, and is unconcerned with a party's subjective intentions. *See* 2 Williston on Contracts § 6:3 (4th ed.). In Ohio, "an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance either by a prompt promise to ship or by the prompt or current shipment of conforming or non-conforming goods." OHIO REV. CODE § 1302.09. By submitting its Purchase Orders for the engines, Rayco was offering to enter into a contractual relationship with Deutz. The Purchase Orders described the number and type of engines Rayco wished to purchase, and both Rayco and Deutz understood that upon Deutz's acceptance of the Purchase Orders, each party would be obligated to perform under the contract. Deutz, by confirming the Rayco Purchase Orders, objectively notified Rayco that it intended to accept payment for the requested engines, and in return, it intended to ship the engines Rayco had ordered.

Further, each Rayco Purchase Order contained a statement subjecting Deutz to Rayco's Terms and Conditions of Purchase. By accepting Rayco's offers, Deutz objectively demonstrated its intention to be bound by Rayco's terms. Deutz points out that it has never seen a copy of Rayco's Terms and Conditions. As mentioned, however, contract law is concerned only with objective displays of intent. It makes no difference that Deutz failed to inquire as to

the exact Terms and Conditions of Rayco's offers – by accepting those offers, Deutz manifested its objective intent to be bound. Rayco reasonably construed Deutz's acceptances as demonstrating its understanding that it must comply with Rayco's terms. In addition, Rayco made no attempt to conceal its terms,[2] and, perhaps more importantly, there is no evidence to suggest that Deutz requested and was denied a copy of those terms. Had Deutz exercised reasonably prudent care in the contract formation process and simply asked Rayco to provide a copy of its Terms and Conditions before accepting them, it would have had an opportunity to object to those terms and perhaps negotiate a more favorable arrangement.

Deutz argues, however, that its Order Confirmations did not operate as acceptances of Rayco's offers, but rather as rejections and counter-offers, subject to Deutz's TCS. Deutz urges the Court to construe Rayco's conduct of accepting engine delivery as evidence that it was Deutz, not Rayco, that made the initial offers. Although a response that alters the terms of the original offer may be construed as a counter-offer, a specific provision in the Uniform Commercial Code argues against such a reading. U.C.C. § 2-207. Known informally as "The Battle of the Forms Rule," § 2-207(1) (codified into OHIO REVISED CODE § 1302.10(A)), the provision states that "a definite and seasonable expression of acceptance or a written confirmation" will operate as an acceptance, even when the expression contains additional or divergent terms, unless the "acceptance is *expressly made conditional on assent* to the additional

---

[2] Rayco's Purchase Orders contained conspicuous notice that the orders were subject to its terms and conditions. "Conspicuous" terms include: 1) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font or color to the surrounding text; and 2) language in the body of a record in larger or contrasting type, font or color to the surrounding text. U.C.C. § 1-201(10)(A) & (B). Rayco's terms appear at the bottom of its purchase orders in all capital letters, using bold typeface that stands out against the surrounding text.

or different terms." *Id.* (emphasis added). Thus, in order for Deutz's Order Confirmations to serve as rejections and counteroffers, there would need to be a condition imposed on Rayco to expressly accept Deutz's additional terms. *See, e.g.*, *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir. 1972) (holding that the offeree's acceptance with additional terms "must be *expressly* conditional on the offeror's *assent* to those terms"). Deutz argues that Rayco's express acceptance of Deutz's terms, in June 2006 (a date far removed from the contract formation), should satisfy this requirement. Even if Rayco's subsequent acquiescence constitutes an acceptance of Deutz's terms, those terms will not necessarily apply. Deutz must make its own acceptance of the original offer *contingent upon* Rayco's express acceptance of the proposed modification. Deutz has not demonstrated that its Order Confirmations required any further action by Rayco before Deutz would accept the contract. On the contrary, each Order Confirmation concluded the formation of a bilateral contract, with performance outstanding by both parties – Deutz to ship the engines and Rayco to pay for them.

Similarly, Deutz may not rely on O.R.C. § 1302.10(B), which states that for contracts between merchants, the new terms automatically become part of the contract. This broad rule contains three exceptions, at least one of which precludes Deutz's terms from applying here. According to O.R.C. § 1302.10(B), additional terms will not automatically incorporate into the contract when: 1) the original offer "expressly limits acceptance to the terms of the offer;" 2) the additional terms "materially alter" the contract; or 3) the offeror notifies the offeree of its objection to the new terms within a reasonable time. Rayco's Terms and Conditions state that "THIS OFFER EXPRESSLY LIMITS ACCEPTANCE TO THE TERMS STATED HEREIN"

(capitalization in original). The language is nearly an exact match with O.R.C. § 1302.10(B)(1), and prevents any additional terms from automatic incorporation into the contract.

In a final effort to incorporate its terms into the deal, Deutz points to Rayco's June 19, 2006 letter (Doc. 17-10), in which Rayco expressly states that it "has no choice but to accept" Deutz's TCS for "all past, present and future sales." Even ignoring the economic duress Rayco may have experienced due to Deutz's refusal to resume shipments, Rayco's express acceptance of Deutz's TCS came months after performance of the contracts at issue. At the time of initial acceptance, Deutz did not require Rayco to expressly comply with its added terms, but rather shipped its engines and accepted payment from Rayco. Therefore, Deutz cannot now argue that it conditioned acceptance on Rayco's express assent to Deutz's TCS.

Motion to Transfer Venue:

Deutz's failure to show that its TCS apply to the Rayco contracts does not immediately defeat its motion to transfer venue pursuant to 28 U.S.C. §§ 1406(a) or 1404(a). However, Deutz's § 1406(a) motion can be immediately disposed of, as § 1406(a) applies only when a plaintiff has brought suit in an improper venue. Deutz argues that its parent corporation and co-defendant, Deutz AG, a German corporation, is improperly before this Court, accounting for its § 1406(a) motion. Contrary to Deutz's assertion, 28 U.S.C. § 1391(a)(2) establishes proper venue in a judicial district where a substantial part of the events giving rise to the claim occurred. Rayco's suit alleges both failure of contract and failure in manufacture of defendants' engines, and a significant amount of the events related to both occurred in the Northern District

of Ohio. Therefore, venue is proper in this District as to both defendants and Deutz's § 1406(a) motion is not supported by the facts of the case.

As opposed to §1406(a), §1404(a) provides defendants an opportunity to transfer venue even when the suit was originally brought in a proper forum. The venue transfer statute balances a plaintiff's right to initiate his action in a favorable venue against the defendant's right to transfer when the plaintiff's selection creates inconvenience for the defendant or witnesses, or when justice may more freely be administered in another court. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The statute provides the Court with broad discretion by permitting it to order a transfer "in the interest of justice." §1404(a). However, the change of venue statute "was not designed to narrow the plaintiff's venue privilege or to defeat the state-law advantages that might accrue from the exercise of this venue privilege." *Van Dusen v. Barrack*, 376 U.S. 612, 635 (1964). Abundant precedent establishes that the court should afford the plaintiff's choice of forum great deference. *See, e.g.*, *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947) (holding that plaintiff's home forum should not be contravened unless the defendant can "establish such oppressiveness and vexation...as to be out of all proportion to plaintiff's convenience"); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (noting that "a plaintiff's choice of forum should rarely be disturbed"). Thus, to support its motion to transfer, the burden is on Deutz to make a strong showing that it would be severely inconvenienced by proceeding with trial in the Northern District of Ohio.

In large measure, Deutz relies on its consent to jurisdiction clause to show that transfer is appropriate. Having dismissed Deutz's TCS as inapplicable to the Rayco contracts, however,

this Court need not discuss further Deutz's consent to jurisdiction clause. Without a doubt, defending in Ohio will impose some degree of inconvenience on Deutz, given its principal place of business in Georgia. Such is the nature of defending in a diversity suit. Deutz has not offered any other reason why trial in Ohio would impose so severe an encumbrance on its ability to defend itself that the Court should disturb Rayco's choice of its home forum. In fact, Deutz's twenty-year business relationship with Rayco certainly establishes that it has (or should have) anticipated potential suit in Ohio. All of Rayco's Purchase Orders were generated in Ohio, and Deutz shipped hundreds of engines to Ohio. Deutz is licensed to do business in Ohio and thus has purposefully availed itself to the protections, and repercussions, of Ohio law. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985). Furthermore, Rayco has not chosen a forum to harass or in any other way inconvenience Deutz; rather, Rayco has exercised its right to litigate in a local forum where a substantial part of the events giving rise to the suit occurred. Thus, Deutz has not made any real showing that the inconvenience of defending in Ohio will support its motion to transfer.

Deutz has also failed to show that suit in Ohio would place an undue inconvenience on witnesses. Rather than showing that its witnesses would be significantly burdened by suit in Ohio, Deutz notes the obvious – that litigation in Georgia would be more convenient for its witnesses and that litigation in Ohio would be more convenient for Rayco's witnesses. Deutz essentially concedes that witness convenience would not be substantially affected whether the suit is litigated in Ohio or in Georgia, which certainly does not strengthen its case for transfer.

Finally, Deutz attempts to argue that the interests of justice are better served in Georgia because personal jurisdiction over Deutz AG cannot be established in Ohio. The argument is irrelevant in a venue analysis. A court need not have personal jurisdiction over a defendant in order to establish proper venue. "Venue is distinct from jurisdiction. Venue may be proper or improper, independent of questions of subject matter or personal jurisdiction." *Driscoll v. New Orleans Steamboat Co.*, 633 F.2d 1158, 1159 (5th Cir. 1981). Further, 28 U.S.C. § 1391(d) states that "an alien may be sued in any district." It is well established that § 1391(d) was designed to reach corporations as well as individuals. *See, e.g.*, *Brunette Mach. Works, Ltd. v. Kockum Indus.*, 406 U.S. 706, 714 (1972)*; Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1410-1411 (9th Cir. 1989). Far from arguing that Georgia retains a greater interest in the outcome of this suit, Deutz essentially declares that the factors of justice are a non-issue, which does little to convince this Court that a transfer is warranted. On the other hand, Rayco asserts, and the Court agrees, that Ohio has a substantial public interest in the resolution of this case.

Lastly, Deutz argues that the Georgia courts should hear this case because Georgia law controls the substantive findings of fact. Deutz bases this assertion largely on the venue provision in its TCS, which states that Georgia law applies to disputes between the parties. However, as the Court has previously found, Rayco's terms and conditions, not Deutz's, apply to the contracts created in this case. Rayco included in its terms a Choice of Law provision, maintaining that "[t]his Purchase Order, the contract based hereon and any questions with respect to the construction, interpretation or performance hereof shall be governed by and determined in accordance with the laws of the State of Ohio." (Doc. 5, Ex. A). As these terms

were accepted by Deutz, they apply here, thus dictating which law shall apply in this dispute.[3] The Court finds that Deutz has not satisfied its burden of demonstrating that either convenience or justice supports a transfer under § 1404(a).

## CONCLUSION

As the movant, Deutz has the burden of establishing facts warranting transfer to Georgia. Deutz relied on its TCS to show that transfer was appropriate; however, Deutz's terms were not incorporated into the Rayco contracts, and therefore, those terms do not support transfer. Further, Deutz has failed to establish that the interests of convenience or justice warrant transfer to another forum. For the reasons stated herein, Deutz's motion to transfer venue is denied.

The Case Management Conference that has been scheduled for July 3, 2008, at 1:00 p.m. shall proceed as scheduled.

IT IS SO ORDERED.

June 12, 2008
Date

*S/ David D. Dowd, Jr.*
David D. Dowd, Jr.
U.S. District Judge

[3] Even if the case were transferred to Georgia, the Erie Doctrine requires that Ohio law apply. When a defendant pursues a transfer, "the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue." *Van Dusen*, 376 U.S. at 639.