DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Rayco Manufacturing, Inc., et al., | ) | CASE NO. 5:08 CV 74 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER |
| | ) | |
| Deutz Corporation, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

In this case, plaintiff Rayco Manufacturing, Inc. (Rayco) and intervening plaintiff, Fecon,

Inc. (Fecon), claim that the Deutz defendants' engines in equipment that they designed,

manufactured and/or sold for use in the tree and landscape industry, failed when used for that

purpose.  Plaintiff and intervening plaintiff (collectively, plaintiffs) allege in their separate

complaints that these engine failures constitute a breach of contract, breach of express warranty,

breach of implied warranty for fitness of a particular purpose, breach of implied warranty of

merchantability, negligence, negligent misrepresentation, and fraud.  *See* ECF 5 and 48.  The

Deutz defendants jointly moved for summary judgment against plaintiff Rayco (ECF 138) and

intervening plaintiff Fecon (ECF 142).  The primary issue in defendants' motions for summary

judgment is that of causation with respect to the engine failures.

(5:08 CV 74)

The parties have fully briefed defendants' motions and the Court heard oral argument on the motions on September 30, 2010.  Subsequent to oral argument, the parties filed post-hearing briefs[1] and submitted supplemental information requested by the Court.[2]

The Court previously denied in part the Deutz defendants' motions for summary judgment with respect to the engines which were the subject of the deposition testimony of Aaron Wade Taylor, Thomas Cole, John Orban, and John Dukes.[3]  ECF 180.  At that time, the Court deferred its ruling on the Deutz defendants' motions for summary judgment with respect to all other Deutz engines which are the subject of Rayco's and Fecon's complaints.  *Id.*

The Court scheduled a trial beginning on November 15, 2010 with respect to the engine failures involving the testimony of Taylor, Cole, Orban, Dukes, Howard and Gourley.  Counsel for the plaintiffs subsequently moved for a continuance of the November 15, 2010 trial date, which counsel for the defendants have opposed.

Against that background, the Court has decided to issue a ruling on the portion of defendants' motions for summary judgment previously deferred.  For the reasons contained herein, the Deutz defendants' motions for summary are granted with respect to all engines for which plaintiffs have not provided a sworn statement by the operator of the subject engine when it failed, or other evidence sufficient under Rule 56 of the Federal Rules of Civil Procedure, that

---

[1] ECF 158, 170, 171, and 179.

[2] ECF 163, 164, 165, 166 and 167.

[3] The Court later included in its partial denial of summary judgment engines which were the subject of the declarations of Chris Howard and Bill Gourley, provided that defendants be given an opportunity to depose these witnesses prior to trial if defendants wished to do so.  *See* ECF 185.

(5:08 CV 74)

when the engine failed it was not being overloaded, or in some fashion, misused or abused by the operator.

## I. FACTUAL SUMMARY

### A.  Rayco

Plaintiff Rayco, an Ohio corporation located in Wooster, Ohio, manufactures and sells specialized equipment for the landscape and forestry industries, including different types of tractor crawlers.  Rayco does not manufacture engines.  As a result, Rayco purchases engines to power the equipment it manufactures.

Rayco purchased diesel engines manufactured by defendant Deutz AG and sold through defendant Deutz Corporation for approximately 20 years.  The transactions giving rise to this suit began in late 2001, when Rayco began purchasing defendants' 82 hp BF4M1011F engine (hereafter the "1011 engine") for use in Rayco's C85 Series crawlers.  Through early 2004, Rayco purchased a total of 131 of the 1011 engines for use in its C85 Series crawlers.  Rayco experienced no significant problems with the 1011 engines in the C85 applications.

In early 2004, defendants discontinued their 1011 engines and replaced them with the 87 hp BF4M2011 engine (hereafter the "2011 engine") to meet federal EPA Tier 2 emission standards.  Rayco discontinued manufacturing its C85 Series crawlers and began producing its C87 Series crawlers powered by the Deutz 2011 engines.  The C87 crawlers were built with steel tracks for use in rugged terrain.  According to Rayco, the Deutz defendants were involved in the selection of the 2011 engine for use in the C87 crawlers.  One of the C87's applications was as a forestry mower.  Forestry mowers are used for land clearing and commercial vegetation control,

3

(5:08 CV 74)

and for cutting and mulching vegetation in difficult terrain.  The Rayco literature regarding the

C87's forestry mower application provided that the machine could be used to mulch trees 4-6

inches in diameter.

Rayco purchased 551 of the 2011 engines for use in the C87 crawlers.  Of those, 468 of

the 2011 engines complied with EPA's Tier 2 emission standards.  In late 2004 and early 2005,

Rayco received reports that a number of C87 Tier 2 2011 engines failed due to overheating.

Between December 2004 through late 2008, approximately 117 of 468 (25%) of the 2011 Tier 2

engines installed in C87 crawlers failed.

Defendant Deutz often replaced the failed engines under warranty with the same Deutz

engine.  Some C87 operators and owners also experienced failures of the replacement engines.

B.      Fecon

Fecon is an Ohio corporation, located near Cincinnati, engaged in the business of

designing, manufacturing, and selling specialized equipment for commercial vegetation control,

land clearing, and the special needs of the tree and landscape industry.  At issue here is a Fecon

tractor or crawler known as the FTX90.  Fecon purchased all of its FTX90 crawlers from Rayco.

Fecon's FTX90 has the same Deutz engine, the 2011 engine, as does Rayco's C87 crawler.  The

FTX90 is the same machine as the C87 that is sold by Rayco to other customers, except that the

FTX90 is painted red while the C87 is painted yellow.

Both the FTX90 and C87 are used as forestry mowers.  As a forestry mower, the machine

is used to clear vegetation through use of a mulching attachment.

4

(5:08 CV 74)

Fecon sold 170 FTX90s between 2004 and 2008.  Of the 170 machines sold, approximately one-third of the FTX90s experienced engine failure or substantial engine problems.  Deutz often replaced the failed engines under warranty, but like Rayco customers, some of Fecon's customers also experienced failures in the replacement engines.

After experiencing multiple failures of the Deutz 2011 engine in both the C87 and FTX90, Rayco's and Fecon's customers no longer wanted Deutz engines.  Fecon and Rayco ultimately replaced the engines in their machines with engines from a different manufacturer.

C.    Deutz Engine Failures

Plaintiffs' expert[4] report reflects that he examined a number of the failed engines and the failures observed - melted pistons and scored cylinders - are the "result of overheating."  Deutz's warranty claim forms for failed engines for the C87 and FTX90 reflect scored and melted pistons, and overheating.  Basically, the problems with the Deutz engines resulted from overheating.  Plaintiffs' expert identifies a number of reasons that overheating could occur - including engine design and application issues, but was not able to determine the "specific root cause" of the engine failures.  ECF 167.

The parties dispute the cause of the overheating.  Rayco and Fecon argue that the engines overheated because the engines are defective, and that those defects include slow acting temperature sensor switches, improperly located temperature sensor switches, undersized oil outlets, and clogged external coolers.  Plaintiffs' expert, Dennis Guenther (Guenther), states in his report states that the engines he examined failed as a result of overheating and he identifies

_____

[4] Plaintiffs' expert is Dr. Dennis Guenther.

5

(5:08 CV 74)

a number of factors that are "candidates" for the cause of the engine failures, including the operation of the engine's kill switch, entrained air in oil, cooling capacity of the system, and overfueling.[5]  ECF 167.  After this analysis, however, Guenther concludes that "[b]ased on research conducted to date, a *specific root cause of the engine failures cannot be determined. There are a number of candidates related to the design of the engine and a number of candidates related to the application of the engine in the Rayco crawler.*"  ECF 167 (emphasis added).[6]

Deutz's expert, however, expressed no such uncertainty regarding the reason for the engine failures at issue.  Robert Kuhn concludes in his expert report that "[t]he damage seen to the subject engines is the result of drooping or lugging the engine for extended periods below its intended operating rpm.  This operating condition was clearly understood and designed against by Rayco in the RG90 application of the 2011 engine."  ECF 138-13.  Engine lugging is engine overloading, and overloaded engines operate at too low of engine speeds, causing the engines to overfuel and build up of heat that can damage an engine to the point of failure.[7]  The Deutz defendants argue that lugging and overloading the engine is an improper use and/or abuse of the engine, and the cause of the engine failures for which they are not responsible.

_____

[5] Guenther identified a number of reasons for overfueling, including operating the engine at low RPMs.  *See* ECF 167, Guenther Depo. (ECF 158-2) at pp. 162-66.

[6] Also present in the record are documents by known and anonymous Deutz authors discussing the same "candidates" for overheating that were the subject of Guenther's expert report, but like Guenther, none conclude that these "candidates" were the cause of the engine failures.

[7] Operating the engine at low RPMs results in overfueling, and therefore overheating, of the engine.  *See* ECF 167, Guenther Depo. (ECF 158-2) at pp. 162-66.

(5:08 CV 74)

## II.  LAW AND ANALYSIS

A.      Causation

While the Deutz defendants offer multiple arguments to support their motions for summary judgment on all of Rayco's and Fecon's claims, the primary and common core of defendants' motions is that plaintiffs cannot establish causation between the engine failures and any defect in the Deutz engines.[8]  Defendants point out that plaintiffs' expert, Dennis Guenther, acknowledges that various scenarios may cause overheating resulting in engine failure, but cannot determine "a specific root cause" for the failures.  Defendants' expert attributes the engine failures to overloading, unrelated to engine defect.  Because Rayco and Fecon are not able to connect the engine failures to an engine defect, defendants conclude that Rayco's and Fecon's claims for breach of contract,[9] breach of warranty (express and implied),[10] fraud and

---

[8] Because the Court concludes that it is appropriate to grant partial summary judgment to defendants on the basis of causation, the other arguments advanced by defendants in support of their motion are not analyzed in this opinion.

[9] Citing *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, No. 5:08-cv-1342, 2010 WL 750141, at *3-*4 (N.D. Ohio March 1, 2010) (causal connection between breach and damages required); *Metro. Life Ins. Co. v. Triskett Illinois, Inc.*, 646 N.E.2d 528 (Ohio App. 1994) (lack of "causation" is "fatal to" breach of contract claim); *Telxon Corp. v. Smart Media of Del., Inc.*, Nos. 22098, 22099, 2005 WL 2292800 (Ohio App. Sept. 21, 2005) ("the damages must have been directly caused by the wrongful breach, not by something else"); *Harrison Const. Co. v.Ohio Turnpike Comm'n*, 316 F.2d 174, 178 (6th Cir. 1963) (applying Ohio law) ("We conclude that a showing of causal connection between the breach of contract alleged and the damage allegedly suffered is part of [plaintiff's] prima facie case on which it sustains the burden of proof.").

[10] Citing R.C. § 1302.27 (breach of the implied warranty of merchantability); R.C. § 1302.28 (breach of the implied warranty of fitness for a particular purpose); R.C. § 1302.26 (breach of express warranty); *Dugan & Meyers Constr. Co. v. Worthington Pump Corp. (USA)*, 746 F.2d 1166, 1175-76 (6th Cir. 1984) (citing *McDonald v.Ford Motor Co.*, 326 N.E.2d 252,

(continued...)

7

(5:08 CV 74)

misrepresentation,[11] must fail.

In opposing defendants' causation based arguments, Rayco and Fecon argue that there is a factual dispute as to the cause of the engine failures and this is a question that must be decided by a jury.  Further, plaintiffs argue that the Deutz defendants' have no evidence to support their position that the engine failures were due to overloading, which is defendants' burden of proof at trial,[12] and point to several specific examples of engine operators who specifically denied that they were overworking or misusing the engines.

As to the parties' respective burdens, Rayco and Fecon maintain that neither Ohio's statutes governing warranty nor the case law require plaintiffs to prove a specific defect,[13] that a defect may be established by circumstantial evidence, and expert testimony is not necessary to

---

[10](...continued)
253, 255 (Ohio 1975) ("the physical fact of a defect is an element which must be proved by the plaintiff")); *Taylor v. Boardman Twp. Local Sch. Dist. Bd. of Educ.*, No. 08 MA 209, 2009 WL 4758818, at *5 (Ohio App. Dec. 1, 2009) (affirming grant of summary judgment on implied warranty of merchantability claim because plaintiff failed to "establish the element of causation"); *Roman v. Volkswagen of Am., Inc.*, No. L-07-1106, 2008 WL 1921717, at *5 (Ohio App. May 2, 2008) (affirming grant of summary judgment on § 1302.26 claim, because plaintiff failed to produce expert or other evidence that defect in product caused her damages); *see also Hine v. Byler*, No. 07CA2961, 2008 WL 152560, at *4 (Ohio App. Jan. 15, 2008) (affirming grant of summary judgment to manufacturer on express warranty claim because plaintiff's expert testified he could find no defect in product).

[11] Citing *Russ v. TRW, Inc.*, 570 N.E.2d 1076, 1083 (Ohio 1991) (fraud); *Gutter v. Dow Jones, Inc.*, 490 N.E.2d 898, 900 (Ohio 1986) (negligent misrepresentation); *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 352-54 (6th Cir. 2000) (fraud).

[12] Citing *Edwards-Warren Tire Co. v. J.J. Glazer Construction Co.,* 565 F.2d 401, 404 (6th Cir. 1977).

[13] Citing *Schweinfurth v. Motorola, Inc.,* 2007 WL 6025288 *2 (N.D. Ohio Dec. 3, 2007); *Urso v. Compact Cars, Inc.*, 2007 WL 2410362 *4 (Ohio App. 11th Dist. 2007).

8

(5:08 CV 74)

establish a breach of warranty.[14]  Plaintiffs argue that summary judgment is not appropriate

because Ohio courts have repeatedly held that, even without proof of a specific defect, a seller

has breached express and/or implied warranties when a products fails either in normal use or in

the particular use for which it was purchased.[15]  Therefore, plaintiffs conclude that because

approximately 25% of the Tier 2 engines failed in the C87 application, a jury could reasonably

find that the defendants breached express and implied warranties relating to those engines.

B.      Summary Judgment Standard

        Summary judgment is appropriate where there are no genuine issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 .  When

considering a motion for summary judgment, "the inferences to be drawn from the underlying

facts contained in [affidavits, pleadings, depositions, answers to interrogatories, and admissions]

must be viewed in the light most favorable to the party opposing the motion."  U.S. v. *Diebold,

Inc.*, 369 U.S. 654, 655 (1962).  However, the adverse party "may not rest upon mere allegation

or denials of his pleading, but must set forth specific facts showing that there is a genuine issue

for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

---

[14] Citing *McCallen v. Keller*, 2000 WL 995489 *2 (Ohio App. 4th Dist. 2000).

[15] Citing *Edwards-Warren Tire Co. v. J.J. Blazer Constr. Co.*, 565 F.2d 401, 403-04 (6th Cir. 1977); *Jetero Constr. Co. v. South Memphis Lumber Co., Inc.*, 531 F.2d 1348 (6th Cir. 1976); *Crown Cork & Seal Co. v. Morton Pharmaceuticals, Inc.*, 417 F.2d 921 (6th Cir. 1969); *CCB Ohio, LLC v. Chemque, Inc.*, 649 F.Supp. 2d 757 (S.D. Ohio 2009); *Urso v. Compact Cars*, 2007 WL 2410362 (Ohio App. 11th Dist. 2007); *Sutphen Towers, Inc. v. PPG Industries, Inc.*, 2005 WL 3113450 (Ohio App. 10th Dist. 2005); *McGuire v. American Suzuki* ; *McCallen v. Keller*, 2000 WL 995489, (Ohio App. 4th Dist. 2000);  *Xerox Corp. v. Ackerman*, 1988 WL 3728 (Ohio App. 6th Dist. 1988); *Gibson v. Paul's Building Supply, Inc.*, 1986 WL 3531 (Ohio App. 11th Dist. 1986).

9

(5:08 CV 74)

The Rule requires the nonmoving party who has the burden of proof at trial to oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  General averments or conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).  Nor may a party "create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony."  *Reid v. Sears Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986) (citing *Biechell v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984)); *but see Baer v. Chase*, 392 F.3d 609, 623-26 (3d Cir. 2004) (noting that a so-called "sham" affidavit need not be disregarded if there is "independent evidence in the record to bolster [the] otherwise questionable affidavit").  Further, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby*, 477 U.S. at 252).

In sum, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. at 250.  Put another way, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.

(5:08 CV 74)

*See also Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 578 (6th Cir. 2003) ("[t]he conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the grant of summary judgment").

C.      Analysis

In this case, defendants have advanced the opinion of their expert, Robert Kuhn, that the cause of the engine failures at issue in this case is due to lugging or overloading the engine below its intended operating RPM for extended periods of time, which resulted in overheating. Defendants' and plaintiffs' experts agree that lugging or overloading the engine can cause overfueling and overheating to the point of engine failure.  However, plaintiffs' expert, Dennis Guenther, did not offer an opinion on the cause of the engine failures.  Rather, he concluded that there are a number "candidates" for the root cause of failure, including engine design and application, but that a "specific root cause of the engine failures has not been determined."[16] Defendants argue that they are entitled to summary judgment because they have offered unrefuted evidence that overloading the engines was the cause of the engine failures, and that the overloading constitutes operator misuse and/or abuse of the engine, for which they are not liable.

In opposing defendants' motion, plaintiffs argue that, notwithstanding defendants' unrefuted expert's conclusion that overloading caused the engine failures, defendants are not entitled to summary judgment because plaintiffs are not required to identify a specific defect or

---

[16] Dennis Guenther opines in his report that "[o]ne aspect of the engine design that is clearly defective is the thermal kill switch, which is designed to be the last line of defense to prevent the engine from overheating.  Its performance is sporadic and frequently not at all within specifications."  ECF 167.  Notwithstanding this opinion, however, Guenther does not opine or conclude that the thermal kill switch is the cause of the engine failures.

(5:08 CV 74)

provide expert testimony to sustain their case, and may rely on circumstantial evidence.  Further, plaintiffs contend that it is defendants' burden to prove that the engine failures were due to overloading and that defendants have no evidence to support that position.

Plaintiffs cite a number of cases in support of their argument that they need not identify a specific defect and may prove their case by circumstantial evidence, and that it is defendants' burden to establish operator misuse of the engine.  One such case is *Edwards-Warren Tire Co. v. J.J. Blazer Construction Co.*[17]

In the *Edwards-Warren Tire* case, a significant number of Michelin tires purchased by defendant Blazer from Edwards-Warren for earth moving equipment failed due to excessive heat buildup, resulting in tread separation and fire, after short periods in service.  A jury found for Blazer against third-party defendant Michelin, and Michelin appealed claiming it was entitled to a directed verdict.  On appeal, Michelin argued that Blazer failed to prove a prima facie case because Blazer "presented no evidence whatsoever that the tires were defective."[18]  However, the Sixth Circuit was not persuaded that Blazer had not proved a prima facie case, concluding that "[f]rom the eyewitness accounts of Blazer's 'tireman,' Herb Azbell, a man with seven and one-half years of tire maintenance experience, a jury could rationally deduce that the structural disintegration of a majority of tires, after short periods of use under normal operation conditions, was caused by latent defects attributable to the manufacturer. . . . It was then the manufacturer's

---

[17] 565 F.2d 401 (6th Cir. 1977).

[18] *Edwards-Warren Tire Co.,* 565 F.2d at 404.

12

(5:08 CV 74)

option to present, as an affirmative defense, evidence of product misuse or other intervening cause." *Edwards-Warren Tire Co.,* 565 F.2d at 404.

In *Edwards-Warren Tire*, over 70 percent of the tires failed and Blazer offered the "eyewitness accounts of Blazer's 'tireman'" that supported a conclusion that "the structural disintegration of a majority of the tires, after short periods of service under normal operating conditions, was caused by a latent defect." *Edwards-Warren Tire Co.,* 565 F.2d at 404. In this case, plaintiffs' expert cannot opine that any defect caused of the engine failure, and, except for the engines for which the Court previously denied summary judgment, plaintiffs have not advanced any "eyewitness accounts" or similar evidence that the engines were not being overloaded when the failures occurred. Further, defendants have come forward with unrefuted expert testimony that engine failures were caused by overloading due to operator misuse and not because of an engine defect.

In the absence of evidence of a defect or of failure when the engine was not overloaded, there is no material fact in dispute to refute defendants' expert testimony that the engines failed due to overheating caused by lugging or overloading the engine. Accordingly, summary judgment is appropriate with respect to these engines.

(5:08 CV 74)

III.  CONCLUSION

For the reasons contained herein, the Court GRANTS IN PART defendants' motion for summary judgment as to all engines except those for which the Court earlier denied defendants' motions for summary judgment.  *See* ECF 180 and 185.

The Court recognizes the complexity created in this case by denying in part and granting in part defendants' motions for summary judgment.  The case is further complicated if the Court proceeds to trial on the engines for which it denied summary judgment, and plaintiffs later prevail on appeal of the instant order partially granting defendants' motion for summary judgment.  As a consequence, plaintiffs' motion (ECF 188) for a continuance of the trial scheduled for November 15, 2010 is GRANTED until further order of the Court.

If plaintiffs are of the view that the instant judgment granting in part defendants' motion for summary judgment is appropriately the subject of an interlocutory appeal,[19] counsel for the plaintiffs may submit a brief in support and a proposed order for the Court's consideration by November 15, 2010.  If the defendants wish to oppose an interlocutory appeal, they should file their opposition by November 29, 2010.

IT IS SO ORDERED.

  November 3, 2010                  *s/ David D. Dowd, Jr.*
Date                                David D. Dowd, Jr.
                                    U.S. District Judge

---

[19] *See* 28 U.S.C. § 1292(b).

14